**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------X
CAROL FISHER,

                  Plaintiff,

            v.

JOHN A. KANAS, JOHN BOHLSEN,
DANIEL T. HEALY, and NORTH FORK
BANKCORPORATION, INC.,

                  Defendants.
----------------------------------------------------X

**MEMORANDUM OF
DECISION AND ORDER**
06-CV-1187 (ADS)(ETB)

**A P P E A R A N C E S:**

**WECHSLER HARWOOD LLP**
Attorneys for the Plaintiff
488 Madison Avenue, Suite 801
8th Floor
New York, NY 10022
    By:    Joel C. Feffer, Esq.,
            Daniella Quitt, Esq., Of Counsel

**WACHTELL, LIPTON, ROSEN & KATZ**
Attorneys for the Defendants
51 West 52nd Street
New York, NY 10019
    By:    William Savitt, Esq.,
            Adam Gogolak, Esq., Of Counsel

**SPATT, District Judge.**

On March 16, 2006, Carol Fisher (the "Plaintiff" or "Fisher") commenced the present action against John A. Kanas ("Kanas"), John Bohlsen ("Bohlsen"), Daniel T. Healy ("Healy") and North Fork Bancorporation, Inc. ("North Fork") (collectively the "Defendants"). In her April 2006, amended complaint, the Plaintiff alleges that the

Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act ("Exchange Act") and breached their fiduciary duties.

Presently before the Court is the Defendants' motion to dismiss the amended complaint, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P") 12(b)(1) and 12(b)(6). Also pending before the Court is the Plaintiff's objections to United States Magistrate Judge E. Thomas Boyle's Memorandum Opinion and Order denying the Plaintiff's motion for a partial lifting of the automatic discovery stay mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

## I. BACKGROUND

### A. FACTUAL BACKGROUND

On April 21, 2006, the Plaintiff, a stockholder of North Fork, filed an amended complaint against North Fork, as well as the following North Fork executives: (1) Kanas, North Fork's President, Chief Executive Officer and Chairman of the Board of Directors; (2) Bohlsen, North Fork's Vice Chairman of the Board of Directors; and (3) Healy, North Fork's Executive Vice President and Chief Financial Officer. The Plaintiff alleges that the Defendants purposely misrepresented executive compensation policies to stockholders in violation of Section 14(a) of the Exchange Act.

According to the Plaintiff, in March 2006, North Fork announced that Capital One would acquire North Fork. Stockholders discovered that upon the acquisition, various change-in-control agreements between North Fork and its executives would

result in a payment of $288 million to executives, including a "tax gross-up," whereby North Fork would pay the individual Defendants' personal income taxes. In addition, under the merger agreement between North Fork and Capital One, North Fork shareholders would receive cash and Capital One stock valued at $31.18 per North Fork share.

The Plaintiff claims that prior to the acquisition announcement, stockholders were not aware of the executive compensation arrangements. In particular, the Plaintiff claims that from 2003 through 2005, when North Fork's stockholders elected the Board of Directors, executive compensation was misrepresented by the Defendants. Prior to each year's election, the stockholders received proxy statements containing information regarding executive compensation. However, the proxies did not solicit shareholder votes regarding executive compensation. The proxies solely concerned the election of Directors.

The Plaintiff contends that the proxy statements contained "materially false and misleading" statements "because defendants omitted to disclose accurately the potential magnitude of the payments under the change-in-control agreements with its executive officers." The Plaintiff alleges that "North Fork's proxy statements painted a picture of a company with reasonable executive compensation standards."

In this regard, the Plaintiff takes issue with the following assertions contained in the proxy statements: (1) North Fork's "long-time adherence to good governance

3

principles in dealing with executive compensation"; (2) "the types of compensation we pay to our executives have always remained within the traditional categories"; (3) the change-in-control "agreements are fairly standard in form and substance"; (4) North Fork "places senior management in the same position with respect to their stock awards that long-term stockholders occupy with respect to their investment"; and (5) North Fork "never made available or permitted the types of non-standard benefits or arrangements that . . . are so obscure as to escape investors' notice."

The Plaintiff claims that the $288 million payment which includes the payment of the individual Defendants' income taxes, is unusual and overly generous. The Plaintiff claims that the five specific assertions set forth in the proxy statements were misleading to stockholders. The Plaintiff seeks to enjoin the payment of the executive compensation.

**B.  PROCEDURAL HISTORY**

In June 2006, the Defendants moved to dismiss the complaint. The Defendants contend that the Plaintiff failed to allege any link between the proxy statements and the challenged executive compensation agreements. The Defendants further claim that the Plaintiff did not suffer an injury and failed to allege any material misrepresentations made by the Defendants. The Defendants note that the proxies informed stockholders that income taxes payable by executives as a result of vesting of shares of stock would be paid by North Fork. The Defendants further claim that

4

North Fork publicly filed a Form 10-K which discussed payment of executive income taxes.

In opposition to the Defendants' motion, the Plaintiff argues that the proxy statements were materially misleading and that she was injured because the proxy statements prevented her from casting a fully informed vote during elections. The Plaintiff further claims that the issues raised by the Defendants are not appropriate for resolution on a motion to dismiss.

In June 2006, the Plaintiff moved to partially lift the discovery stay mandated by the Private Securities Reform Act triggered by the filing of the Defendants' motion to dismiss. The Defendants opposed the motion, and on August 4, 2006, Magistrate Judge Boyle denied the Plaintiff's motion. On August 9, 2006, the Plaintiff filed objections to Magistrate Judge Boyle's Order.

The Defendants' motion to dismiss and the Plaintiff's objections to Magistrate Judge Boyle's Order are now pending before this Court.

## II. DISCUSSION

**A.     The Motion to Dismiss**

    **1.     The Standard of Review**

        **a.     Rule 12(b)(6)**

In a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court may only dismiss the complaint if it appears beyond doubt that the plaintiffs can prove no set of facts in support of her complaint which would entitle her to relief. See <u>King v. Simpson</u>, 189 F.3d 284, 286 (2d Cir. 1999); <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996); <u>I. Meyer Pincus & Assocs. v. Oppenheimer & Co.</u>, 936 F.2d 759, 762 (2d Cir. 1991) (holding that dismissal is inappropriate unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"). The issue to consider is not whether the plaintiffs will ultimately prevail, but whether she is entitled to offer evidence to support her claims. See <u>Villager Pond, Inc. v. Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995).

Indeed, it is not the court's function to weigh the evidence that might be presented at trial, rather the court must merely determine whether the complaint itself is legally sufficient. See <u>Villager Pond</u>, 56 F.3d at 378. The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See <u>Lentell v. Merrill Lynch & Co., Inc.</u>, 396 F.3d 161, 165 (2d Cir. 2005); <u>DeMuria v. Hawkes</u>, 328 F.3d 704, 706 (2d Cir. 2003); <u>Koppel v. 4987 Corp.</u>,

167 F.3d 125, 127 (2d Cir. 1999); Thomas v. City of New York, 143 F.3d 31, 36 (2d Cir. 1998).

In making this decision, the court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Israel Discount Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999); see Rothman v. Gregor, 220 F.3d 81, 89 (2d Cir. 2000) (holding that for the purpose of deciding a motion to dismiss, the complaint includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999). The court also may consider documents that the plaintiff either possessed or knew about and upon which she relied in bringing the suit. Rothman, 220 F.3d at 97; Cortec Industries, Inc. v. Sum Holding, L.P., 949 F.2d 42, 47–48 (2d Cir. 1991).

Further, in securities fraud actions, the court may consider documents that are required to be filed, and actually have been filed with the SEC. Rothman, 220 F.3d at 89; San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Companies, Inc., 75 F.3d 801, 808–09 (2d Cir. 1996); Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) (Court may rely on proxy statement in considering a motion to dismiss). However, "[i]t must also be clear that there exist no material

disputed issues of fact regarding the relevance of the document." Faulkner v. Beer, No. 05-1568-CV, 2006 WL 2588014, at *3 (2d Cir. Sept. 8, 2006).

Rule 9(b) of the Federal Rules of Civil Procedure sets forth additional pleading requirements with respect to the allegations of fraud. In particular, Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In securities fraud actions, the requirements of Rule 9(b) are applied "assiduously." Lentell v. Merrill Lynch & Co., 396 F.3d 161, 168 (2d Cir. 2005); see Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127 (2d Cir. 1994). In addition, the Private Securities Litigation Reform Act of 1995 (the "PSLRA") heightened Rule 9(b)'s requirement for pleading scienter. See 15 U.S.C. § 78u-4(b)(3)(A); see also Press v. Chemical Inv. Servs. Corp., 166 F.3d 529, 537-38 (2d Cir. 1999). As a result, in securities fraud actions, scienter may not be averred generally. Rather, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Press, 166 F.3d at 538 (quoting 15 U.S.C. § 78u-4(b)(3)(A)); see also Chill v. General Elec. Co., 101 F.3d 263, 268–69 (2d Cir. 1996).

### b. Rule 12(b)(1)

When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. See Robinson v. Gov't of Malaysia,

269 F.3d 133, 141 n.6 (2d Cir. 2001); Antares Aircraft, L.P. v. Fed. Rep. of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991), vacated on other grounds, 505 U.S. 1215 (1992); Exch. Nat'l Bank of Chicago v. Touce Ross & Co., 544 F.2d 1126, 1130 (2d Cir. 1976). Under Rule 12(b)(1), the court must accept as true all material factual allegations in the complaint but will not draw inferences favorable to the party asserting jurisdiction. See Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998); Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992).

**B.     The Federal Securities Laws**

The Plaintiff alleges claims under sections 14(a) and 20(a) of the Exchange Act. The federal securities laws share the common requirement that the Plaintiff identify "a materially misleading statement made by the defendant." Lasker v. New York State Elec. & Gas Corp., 85 F.3d 55, 57–58 (2d Cir. 1996); I. Meyer Pincus, 936 F.2d at 761. Section 14(a) and Rule 14a-9 of the Exchange Act bar the dissemination of proxy statements that are "false or misleading with respect to any material fact." 17 C.F.R. § 240.14a-9(a); see 15 U.S.C. § 78n(a); Schiller v. Tower Semiconductor Ltd., 449 F.3d 286, 290 (2d Cir. 2006). Section 20(a) of the Exchange Act is necessarily predicated on a primary violation of securities law and imposes "control person" liability on individual defendants. Rombach v. Chang, 355 F.3d 164, 177–78 (2d Cir. 2004).

### 1. Section 14(a)

The PSLRA sets forth the pleading standards for the Plaintiff's § 14(a) claim. "The PSLRA requires that the complaint specify each statement that is alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made upon information and belief, all facts with particularity upon which that belief is formed." Bond Opportunity Fund v. Unilab Corp., No. 99 Civ. 11074, 2003 U.S. Dist. LEXIS 7838, at *8-9 (S.D.N.Y. May 12, 2003) (citing 15 U.S.C. § 78u-4 (b)(1)). The Plaintiff "must show that (1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiff's injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was 'an essential link' in the accomplishment of the transaction." Id. (citing Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 384-85, 90 S. Ct. 616, 621-22, 24 L. Ed. 2d 593 (1970)).

#### a. Materiality

The materiality standard under Section 14(a) and Rule 14a-9 of the Exchange Act pertaining to proxy statements hinges on whether "a reasonable shareholder would consider it important in deciding how to vote." Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1090, 111 S. Ct. 2749, 115 L. Ed.2d 929 (1991); TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 48 L. Ed. 2d 757, 96 S. Ct. 2126 (1976); Resnik v. Swartz, 303 F.3d 147, 151 (2d Cir. 2002). Accordingly, at the pleading stage, the

plaintiff satisfies the materiality requirement "by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions." Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000); see also Caiola v. Citibank, N.A., N.Y., 295 F.3d 312, 329 (2d Cir. 2002).

In the motion to dismiss, the Defendants argue that the Plaintiff has not pled any material misstatement or omission actionable under the federal securities laws. The Defendants further claim that they acted in accordance with SEC regulations. In fact, "when proxies are solicited for an election of directors or for certain actions related to executive and director compensation, the proxy statement must include information . . . [which] sets forth disclosure requirements with respect to various categories of executive and director compensation, including salaries, bonuses, stock option grants, and others." Resnik, 303 F.3d at 151. This information was contained in the relevant proxy statements. The Plaintiff does not allege that the Defendants failed to include any required or relevant information in the proxy statements. In fact, the Plaintiff does not claim that the proxy statements failed to comply with SEC regulations.

The alleged misstatements set forth by the Plaintiff are vague, general statements regarding the company and its compensation policies. The Plaintiff does not allege that the proxies contained any specific misrepresentation of compensation. For example, the Plaintiff does not allege that there were erroneous calculations of

compensation. Moreover, despite the Plaintiff's claims, the proxy statements informed stockholders that the individual Defendants had change-in-control severance agreements. The Plaintiff does not allege that the Defendants were required to provide any detailed information regarding these agreements. Further, the five statements set forth by the Plaintiff all constitute generalizations regarding integrity and fairness that amount to no more than inactionable puffery. Lasker, 85 F.3d at 59; In re JP Morgan Chase, 363 F. Supp. 2d at 633; Manavazian v. ATEC Group, Inc., 160 F. Supp. 2d 468, 480 (E.D.N.Y. 2001) ("statements containing simple economic projections, statements of optimism, and other puffery are insufficient to sustain a claim for securities fraud"); In re Kidder Peabody Sec. Litig., 10 F. Supp. 2d 398, 413 n. 15 (S.D.N.Y. 1998) (finding that statements relating to defendants' strategic planning were puffery.); see also In re Salomon Inc. Sec. Litig., No. 91 Civ. 5442, 1994 WL 265917, at *9 (S.D.N.Y. June 16, 1994).

"Plaintiffs who charge that a statement of opinion, including a fairness opinion, is materially misleading, must allege 'with particularity' 'provable facts' to demonstrate that the statement of opinion is both objectively and subjectively false." Bond Opportunity Fund, 2003 U.S. Dist. LEXIS at *15 (citing Virginia Bankshares, 501 U.S. at 1093-98). Moreover, the Plaintiff "must show both that the directors did not actually hold the belief or opinion stated, and that the opinion stated was in fact incorrect." Id. In the present case, the Plaintiff fails to set forth any facts

demonstrating that the statements were actually false or that the Defendants did not actually hold the opinions stated. The Plaintiff claims only that the payments promised to executives were unreasonable and unusual, quoting an unnamed executive compensation expert in support of her claim that it was unusual for North Fork to pay executives' income taxes.

However, a reasonable investor, concerned with executive compensation and the payment of executives' income taxes would not have relied on the general, opinion statements contained in the proxies. A reasonable investor would have read North Fork's publicly filed Form 10-K and the proxy statements, which, despite the Plaintiff's claims, informed investors that executive income taxes would be paid by the company. "An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth." Brown v. E.F. Hutton Group, Inc., 991 F.2d 1020, 1032 (2d Cir. 1993).

Therefore, the Court finds that, accepting the allegations in the amended complaint as true, the Plaintiff fails to sufficiently allege that the Defendants made material misrepresentations.

      b.    **Causation**

The Plaintiff further fails to sufficiently allege causation. An action brought pursuant to section 14(a) and based on an alleged material misrepresentation in proxy materials "should be sustained only when it challenges a transaction which was the

subject of the proxy materials, such as approval of a merger agreement or the election of corporate directors." Brayton v. Ostrau, 561 F. Supp. 156, 162 (S.D.N.Y. 1983). The causation requirement is established "where the challenged proxy statement 'was an essential link in the accomplishment of the transaction.'" Grace v. Rosenstock, 228 F.3d 40, 47 (2d Cir. 2000) (citing Mills, 396 U.S. 375).

"[A] plaintiff must present nonspeculative evidence of loss causation and transaction causation." Id. at 48 (the Court determined that the causation principle was applicable to claims brought under section 14(a) and section10(b)). A plaintiff alleges "sufficient causation when the plaintiff points to a material violation of the proxy rules in a situation where shareholder approval was necessary for a company to complete an allegedly unfavorable transaction." Koppel, 167 F.3d at 137.

The Second Circuit has "recognize[d] that loss causation or economic harm to plaintiffs must be shown, as well as proof that the misrepresentations induced plaintiffs to engage in the subject transaction, that is, transaction causation." Wilson v. Great Am. Indus., 979 F.2d 924, 931 (2d Cir. 1992) ("Here loss causation may be established when a proxy statement prompts a shareholder to accept an unfair exchange ratio for his shares rather than recoup a greater value through a state appraisal. And transaction causation may be shown when a proxy statement, because of material misrepresentations, causes a shareholder to forfeit his appraisal rights by voting in favor of the proposed corporate merger.").

In the present matter, the challenged change-in-control executive compensation agreements were not subject to approval by the shareholders and although mentioned in the proxies, were not the subject of the challenged proxies. As admitted by the Plaintiff, the challenged proxies only concerned an election of Directors. Moreover, the Plaintiff does not seek to enjoin the elections that were the subjects of the proxies. Instead, the Plaintiff appears to contend that the statements regarding compensation contained in the proxies misled shareholders by not providing them with the opportunity to consider the change-in-control agreements in their voting decisions. However, the Plaintiff has not actually alleged that the shareholders would have voted differently if the proxies had not contained the alleged misrepresentations. In fact, the Plaintiff does not seek to enjoin or nullify the results of the election; the Plaintiff only seeks to enjoin the compensation award which was not the subject of the proxies.

"The courts of this Circuit have rejected this sort of attenuated 'but for' causation analysis." Brayton, 561 F. Supp. at 162 ("Plaintiffs contend that if the Ostrau Group defendants had revealed in their proxy materials their true intention to coerce the buy-out of their shares at a premium, they would have received fewer proxies, resulting in a victory for the Management Group's slate of nominees. Had the Management Group received significantly greater shareholder support, there would

have been no need to seek the aid of the New Hampshire District Court in enjoining the election, and the allegedly unlawful repurchase agreement would never have taken place."). In Brayton, the Court determined that the Plaintiffs' claim failed because the Plaintiffs did not demonstrate transaction causation and the Court rejected the Plaintiffs' "attenuated but for causation analysis." In fact, Courts' "attention to causation will serve to keep out more speculative claims." Koppel, 167 F.3d at 137.

Therefore, the Court finds that, taking the allegations in the complaint as true, the Plaintiff fails to set forth sufficient allegations to satisfy a causation analysis. The Complaint clearly alleges that the compensation agreements did not require shareholder votes and that the proxies were relevant only to an election of Directors. The allegations in the complaint are insufficient to demonstrate a connection between the election and the compensation agreements or that the election results would have differed. The Plaintiff's allegations are insufficient to demonstrate that misrepresentations either induced her to take some action or caused her not to take action.

    c.  **Injury**

The Plaintiff must also demonstrate that the misrepresentation in the proxy statement caused the Plaintiff injury. Bond Opportunity Fund, 2003 U.S. Dist. LEXIS at *8-9. However, the Plaintiff fails to allege that she suffered any injury as a result of the alleged misstatements. The Plaintiff admits that upon merger, she will receive

cash and stock valued at $31.18 per North Fork share. In fact, the Plaintiff does not allege that she suffered any monetary injury as a result of the proxy statements. Moreover, the relief sought by Plaintiff would merely concern payments to the North Fork executives, apparently resulting in no benefit to the Plaintiff.

Although the Plaintiff further claims that shareholders could not make an informed decision regarding the election as a result of the alleged misrepresentations as to compensation, as previously discussed, this claim is speculative and the remedy sought by the Plaintiff has absolutely no relation to the Directors that were elected. Essentially, the Plaintiff claims that the Defendants breached their fiduciary duty to the corporation. "We have long recognized that no general cause of action lies under § 14(a) to remedy a simple breach of fiduciary duty." Koppel, 167 F.3d at 133.

The Plaintiff's allegations are insufficient to state a claim pursuant to Section 14(a) of the Exchange Act. Accordingly, the Plaintiff's Section 14(a) claim is dismissed.

### 2. Section 20(a)

In order to maintain a cause of action for control person liability under § 20(a), the Plaintiff must establish: "(1) an underlying violation by a control person or entity; (2) that the defendants are controlling persons; and (3) that the defendants were in some meaningful sense culpable participants in the fraud." Bond Opportunity Fund, 2003 U.S. Dist. LEXIS at *37-38 (citing In re: Digital Island Secs. Litigation, 223 F. Supp. 2d 546,

560 (D. Del. 2002)). The Plaintiff's claims pursuant to § 20(a) must be dismissed because the Plaintiff is unable to state a claim pursuant to section 14(a). Id. The Plaintiff failed to establish an underlying violation, and therefore, cannot establish that any individual is liable. As a result, "there is no need to determine whether the defendant directors were controlling persons within the meaning of the securities laws and whether they were culpable participants in an underlying securities violation." Id.

Accordingly, the Plaintiff's Section 20(a) claim is dismissed.

### 3. Breach of Fiduciary Duty

Although the Plaintiff has alleged a state law claim of breach of fiduciary duty against the Defendants, jurisdiction over this claim is asserted solely on the basis of the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The Court has determined that the securities law claims should be dismissed. As a result, there is no basis upon which to retain supplemental jurisdiction over the state law claim. Id. (citing United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966)).

Accordingly, the Plaintiff's breach of fiduciary claim is dismissed.

### C. As To the Request to Commence Limited Discovery

Magistrate Judge Boyle denied the Plaintiff's motion to commence limited discovery and lift the automatic stay triggered by the filing of the Defendants' motion

to dismiss. As this Court is dismissing the Complaint, the Plaintiff's objections to Magistrate Judge Boyle's Order are denied as moot.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the motion by the Defendants to dismiss the complaint for failure to state a claim and lack of subject matter jurisdiction is **GRANTED**; and it is further

**ORDERED**, that the Plaintiff's objections to Magistrate Judge Boyle's Order are **DENIED** as moot; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
December 7, 2006

*/s/Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge